## THE WESTPORT.

### (District Court, N. D. California. June 23, 1904.)

#### No. 13,114.

1. MASTER AND SERVANT—INJURY OF SEAMAN—UNSAFE PLACE TO WORK.

By order of the master of a steamer, libelant and other seamen removed from the bitts and carried to the capstan a hawser with which the vessel was being warped to a wharf. The hawser was then hove tight and tautened by backing the vessel, when the capstan gave way, and libelant was severely and permanently injured. The capstan was wholly insufficient to stand the strain put upon it in warping the steamer, and was known to be so by the master, but not by libelant; and the master claimed that before backing he directed the hawser to be taken from the capstan and made fast to the bitts; but, if such order was given, it was not understood by the men. *Held* that, even if given, it did not relieve the vessel from liability for the failure of the master to see that it was understood and obeyed before backing, through which libelant was placed in a dangerous position.

In Admiralty. Suit by seamen to recover for personal injuries.

F. R. Wall, for libelant.
C. H. Wilson, for claimants.

DE HAVEN, District Judge. This is an action to recover damages for personal injuries sustained by the libelant while serving as a seaman on board the steamer Westport. The libelant, when injured, was engaged in taking care of the slack of a hawser with which the Westport was being warped to the wharf in San Pedro Harbor. A few minutes before the accident the captain gave orders for this hawser to be taken from the bitts and carried to the capstan, which was done. The hawser was then hove tight, and a strain put upon it by the backing of the steamer which carried the capstan away, severely injuring the libelant in the chest and back, and also breaking both legs, one of which had to be amputated. It is conceded that the capstan was only fit for use in heaving in the slack of the hawser, and was entirely insufficient to sustain such a strain as was required in using it for the purpose of warping the steamer. It is also conceded that this weak and defective condition of the capstan was known to the master, but not to the libelant, or to the other seamen engaged in working it. The Westport had on at the time a deck load of lumber 12 or 13 feet in height, which prevented the master, in the position where he stood upon the bridge, from seeing the capstan or the men engaged in working there. The contention of claimants is that before any strain was put upon the hawser by backing the steamer the master gave a second order to take the hawser from the capstan, and make it fast to the bitts; and it is insisted that, if this order had been obeyed, the accident would not have occurred, and that, therefore, the proximate cause of the injury received by the libelant was the disobedience of this order by himself and his fellow servants. I am not satisfied from the evidence that such an order was given. The libelant testified that he understood the order to be to make the hawser good and fast, and take more turns; and this is, in substance, the evidence of two of the sailors who were assisting him. Capt. Seel, an intelligent and apparently disinterested witness, called in behalf of

the claimants, testified that the order actually given by the master was to heave tight and make fast to the bitts. This certainly was not an absolute command to take the hawser from the capstan and make it fast to the bitts. But, assuming that the last order given was to the effect that the hawser should be removed from the capstan and made fast to the bitts, still the libelant, under the particular facts of this case, is entitled to recover damages for the injuries sustained by him. The hawser had been taken to the capstan by direction of the master, who knew that the place where the libelant was working was thus rendered unsafe in the event that any strain should be placed upon the hawser while it was on the capstan. Under such circumstances it was the duty of the master, as the representative of the owners, to have ascertained, before he backed the steamer, that his orders had been conveyed to the men at the capstan and executed, thus making it safe for the libelant to remain in the place where he was working. The owners of the steamer owed to the libelant the positive duty of providing him a safe place in which to work, and they are responsible for the failure of the master to discharge this duty. For these reasons, and also because, upon consideration of all the evidence, I believe the allegations of the libel as to the manner and cause of the accident are sustained, a decree must be entered in favor of the libelant.

Upon the question of damages the evidence shows that at the time of the accident the libelant was in his twenty-second year, in good health, and earning $45 per month as an able seaman. The injuries received were attended with great suffering and pain, and have made him a cripple for life. In my judgment, the libelant is entitled to recover damages in the sum of $4,500 and costs.